# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

STEVEN CHAN,

   Plaintiff,

  v.

FRANK BISGNANO, Commissioner of Social Security

   Defendant.

_____/

Case No.  1:25-cv-01479-SKO

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

(Doc. 1)

## I.  INTRODUCTION

Plaintiff Steven Chan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") under the Social Security Act (the "Act").  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  BACKGROUND

Plaintiff was born on July 3, 1993.  (Administrative Record ("AR") 191).  He is currently taking classes working toward his General Education Degree.  (AR 20, 257).  Plaintiff filed an application for SSI, alleging he became disabled on November 18, 2014, due to schizoaffective disorder; borderline personality disorder; and cannabis use disorder.  (AR 17, 19, 260, 302).

---

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 9).

**A.      Relevant Evidence of Record[2]**

On October 21, 2023, Dr. Briahnne MacPherson, Psy.D. completed a comprehensive clinical psychological evaluation, including a "medical source statement."  (AR. 387, 393).  The medical source statement reflects Dr. MacPherson's opinion that Plaintiff was "moderately impaired" as to his ability to (1) "understand, carry out, apply, and remember, complex detailed written and oral instructions;" (2) "maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public," and (3) "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek responding and adapting appropriately to changes in a work setting."  (AR 393).  The medical source statement also reflects Dr. MacPherson's opinion that, "[Plaintiff]'s difficulties with psychotic symptoms and mood symptoms could contribute to struggles managing typical situational stressors without interruption in the workweek in most job settings."  (*Id.*).

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on November 6, 2023, and again on reconsideration on December 5, 2023.  (AR 56–74).  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 90–125).  The ALJ conducted a hearing on December 19, 2024.  (AR 34–55).  Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions and work history.  (AR 39–48).

A Vocational Expert ("VE") also testified at the hearing.  (AR 48–55).  In relevant part, the VE testified that an individual with the same age, education as Plaintiff, and no work experience with no exertional limitations, who is "able to understand, remember and carry out simple instructions," "occasionally interact with co-workers, supervisors, but not with the public," and who could "deal with occasional changes in routine work setting," would be able to work as a kitchen help, industrial cleaner, or warehouse worker.  (AR 50–51).  The VE also testified that the "number of absences or days leaving early in a month [that] would be tolerated by an employer for unskilled work" would be "one of each per month."  (AR 51).

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

**C.    The ALJ's Decision**

In a decision dated December 19, 2024, the ALJ found that Plaintiff was not disabled.  (AR 14–33).  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 19–28).  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 28, 2023.  (AR 19).  At step two, the ALJ found Plaintiff's following impairments to be severe: schizoaffective disorder; borderline personality disorder; and cannabis use disorder.  (AR 19–20).  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 20–22).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; he can occasionally interact with coworkers and supervisors; he cannot interact with the public; and he can deal with occasional changes in routine work setting

(AR 22; *see also id* 22–26).  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 23).

The ALJ then determined that Plaintiff had no past relevant work but, given his RFC, he could perform a significant number of jobs in the national economy (step five).  (AR 26–28).  In

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing. (AR 27). The VE testified that a person with the RFC specified above could perform the jobs of industrial cleaner, kitchen helper, and warehouse worker. (AR 50–51). The ALJ ultimately concluded Plaintiff was not disabled at any time after April 28, 2023, the alleged onset date. (AR 28).

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 12, 2025. (AR 1–6). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to

perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff asserts two claims of error: (1) the RFC is not supported by substantial evidence because the ALJ failed to adequately address assessed limitations by a credited medical opinion and (2) the ALJ harmfully erred by failing to provide clear and convincing reasons to reject Plaintiff's reported symptoms. (*See* Doc. 14 at 3–18; *see also* Doc. 17 at 2–13). The Commissioner counters that the ALJ (1) appropriately considered the medical evidence and translated credited medical opinions into the assessed RFC and (2) reasonably discounted Plaintiff's self-reported symptoms based on other evidence in the record. (Doc. 16 at 2–7).

The Court agrees with Plaintiff that the assessed RFC is not supported by substantial evidence, as the ALJ did not adequately address whether and how the assessed RFC accounts for credited medical opinion evidence regarding Plaintiff's moderate limitation in adaptive functioning.[4]

### A.    Legal Standard

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins*, 466 F.3d at 883. "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

---

[4] Because further proceedings will necessitate the re-evaluation of the evidence as a whole, *see infra*, the Court does not reach the issue of the ALJ's treatment of Plaintiff's subjective symptoms. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

"Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020); *see also Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); *Neufeld v. Berryhill*, No. 2:16-cv-03644 (VEB), 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); *Bain v. Astrue*, 319 F. App'x 543, 545–46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3–5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record.  But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC.").  An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion. *Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024).

In examining whether RFC limitations account for some opined non-exertional limitations, courts in this circuit have split on whether RFC limitations to simple / routine tasks with limited

public contact account for all moderate non-exertional limitations. *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at \*6 (E.D. Cal. Mar. 8, 2021) (collecting cases and noting that "Courts have rejected the argument that a similar limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday."). Courts within this district have recently noted that the district court case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations . . . identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at \*6; *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-cv-00504-EPG, 2025 WL 318294, at \*4 (E.D. Cal. Jan. 28, 2025) (noting split and finding that limitations in RFC did not account for all moderate limitations opined by physician); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at \*5–6 (E.D. Cal. Jan. 6, 2020) (finding that ALJ's RFC of simple, routine tasks with limited peer and public contact did not account for opined limitations in "completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment").

**B.    Analysis**

In a medical source statement based on a comprehensive clinical psychological evaluation on October 21, 2023, Dr. Briahnne MacPherson, Psy.D, noted moderate limitations in Plaintiff's ability to understand, carry out, apply, and remember, complex detailed written and oral instructions. (AR 393 (also noting that Plaintiff "was unable to complete somewhat complex calculations and struggled to respond appropriately to some complex questions" and that Plaintiff "appeared to put forth variable effort across these tasks and required additional prompting")). Dr. MacPherson also observed Plaintiff had moderate impairments in his ability to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public. (*Id.* (also noting that Plaintiff "displayed variable persistence on moderately challenging tasks and reported psychotic and mood symptoms which could negatively impact his ability to engage with others" and "was able to adequately engage in this assessment with additional support")). Dr.

8

MacPherson additionally opined that Plaintiff had moderate limitations in his ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting. (*Id.* (also noting that "Claimant's difficulties with psychotic symptoms and mood symptoms could contribute to struggles managing typical situational stressors without interruption in the workweek in most job settings.")).

In evaluating the opinion of Dr. MacPherson, the ALJ reasoned as follows:

The psychologist opined that the claimant has moderate impairment in the ability to understand, carry out, apply and remember complex, detailed instructions; moderate impairment in the ability to maintain effective social interaction with supervisors, coworkers, and the public, and moderate impairment in the ability to adapt to usual stresses/pressures common to a competitive work environment.  The examiner opined that the claimant has no impairment in the ability to understand, carry out, apply and remember simple (one-two step) instructions, and only mild impairment in the ability to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace, as well as concluded he is able to manage funds in his own best interest.  This opinion is generally persuasive. It is supported by narrative explanation and the noted objective mental findings on clinical interview and observation, mental status exam, and cognitive testing, and it provides definition of "mild" and "moderate" in vocationally relevant terms.  The mild to moderate limitations are consistent with the claimant's mental health treatment and evidence of normal appearance, well groomed, good hygiene, no acute distress, intact motor skills, direct eye contact, cooperative, respectful, alert, full orientation, euthymic mood and/or affect, coherent speech, only occasional voices, no suicidal ideation, hallucinations, paranoia, or delusions, no impairment in attention, mild impairment in concentration, no impairment in abstraction and judgment, fair insight, intact, linear and logical thought processes, "good" remote, recent and immediate memory, "average" cognitive function, MMSE score indicative of only moderate impairment, and reports voices are "manageable."  The mild-moderate limitations are further consistent [with] the claimant's varied, functional activities of daily living (e.g., manages self-care and medications, meals, transportation/public transit, and treating appointments independently; uses computers/internet, email and text messaging; attends GED classes at city college twice weekly for two hours per session).  Nevertheless, the undersigned finds that the evidence considered as a whole supports somewhat greater social and adaptive limitations more consistent with the maximum residual functional capacity defined above, specifically, work involving no interaction with the public and only occasional changes in routine work setting.  Her finding regarding 1- to 2- step instructions is not persuasive, as this is not consistent with the claimant's ability to take GED classes, take public transit, and send and read text messages, per his testimony.  These activities suggest an ability to understand, remember, and carry out more than 2-step tasks, as he can track information to read and respond to messages, track stops and bus routes for public transit, and track information to study and learn for the GED test.

(AR 24–25 (internal citations omitted)).  Based in part on Dr. MacPherson's opinion, the ALJ determined that Plaintiff retained "the residual functional capacity to perform a full range of work

at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; he can occasionally interact with coworkers and supervisors; he cannot interact with the public; and he can deal with occasional changes in routine work setting." (AR 22).

The question before the Court "is whether the ALJ, having accepted [Dr. MacPherson's] opinion, appropriately translated the moderate limitations from that opinion into concrete restrictions in the RFC." *Harrell*, 2021 WL 4429416, at *6–7; *see also id.* ("But, having clearly stated that he was according Dr. Stafford's opinion great weight, the ALJ was under an obligation to account for the moderate limitations Dr. Stafford identified irrespective of the broader reasoning in support of the RFC."). In answering this question, the Court is mindful that an ALJ's RFC findings need only be consistent with assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010); *Wascovich*, 2019 WL 4572084, at *5 ("This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'"); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022) ("The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.").

Here, the Court finds that the RFC did not completely address or account for the opined limitations in Dr. MacPherson's persuasive opinion regarding Plaintiff's adaptive limitations, despite the ALJ's finding that "the evidence considered as a whole supports somewhat greater . . . adaptive limitations." (AR 25). As an initial matter, the ALJ's limitations to simple instructions and occasional contact with coworkers and supervisors, no contact with the public, and only occasional changes in routine work setting, adequately addressed Dr. MacPherson's opinion that Plaintiff had a moderately limited ability to understand complex instructions and was moderately limited as to his ability to tolerate social interaction. (AR 22, 393). But Dr. MacPherson also noted moderate limitations as to Plaintiff's ability to "adapt to the usual stresses and pressures common to a competitive work environment." (AR 393). This category of "adaptive" limitation involves two

types of limitations (1) Plaintiff's ability to "complet[e] a normal workday or workweek" and (2) Plaintiff's ability to "respond[] and adapt[] appropriately to changes in a work setting." (*Id.*). And, importantly, Dr. MacPherson's more detailed opinion on this limitation primarily addresses the first type of limitation—how the limitation in ability to adapt to the usual stresses and pressures would affect Plaintiff's ability to complete a normal work week. (*See id.* ("Claimant's difficulties with psychotic symptoms and mood symptoms could contribute to struggles managing typical situational stressors without interruption in the workweek in most job settings.")). And while the ALJ addressed and translated the second type of adaptive limitation—"adapting appropriately to changes in a work setting"—into the RFC by limiting Plaintiff to "occasional changes in work setting," (AR 22), the ALJ did not address Dr. MacPherson's opinion as to the first type of adaptive limitation, specifically that Plaintiff's "difficulties with psychotic symptoms and mood symptoms could contribute to struggles managing typical situational stressors without interruption in the workweek in most job settings," (AR 393).

Because the ALJ credited Dr. MacPherson's medical source statement, the Court finds that the ALJ needed to address either (1) how the ALJ translated Dr. MacPherson's assessment of this adaptive limitation into the RFC, or (2) why the ALJ did not translate this part of Dr. MacPherson's assessed adaptive limitation into the RFC. *See Stubbs*, 539 F.3d at 1174. Absent an explanation for failing to account for these limitations, the ALJ's RFC determination is not supported by substantial evidence. *See Sahyoun*, 2020 WL 1492661, at *3; *Robbins*, 466 F.3d at 886 ("an ALJ is not free to disregard properly supported limitations"); *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the] opinion, but the RFC failed to take into account all of the limitations identified by [the doctor], and the ALJ failed to explain why she did not include the limitations in the RFC. As a result, the ALJ erred in formulating the RFC.").

Defendant contends that Dr. MacPherson's opined limitations are accounted for by the assessed RFC. (Doc. 16 at 5–7). The Court disagrees.

Defendant maintains that the RFC adequately accounted for all of Plaintiff's "moderate" limitations considering that a "moderate" limitation in the context of Dr. MacPherson's evaluation is defined as "more than a slight limitation in this area, *but the individual can still function*

11

*satisfactorily.*'" (AR 392).  However, in formulating an RFC, the ALJ must account for *all* of a claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(1); *Valentine*, 574 F.3d 690 (an RFC that "fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs when, as here, an ALJ provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).  Here, the ALJ generally credited Dr. MacPherson's opinion and incorporated other moderate limitations into the assessed RFC.  However, the ALJ did not address Dr. MacPherson's opinion as to Plaintiff's moderate limitations as they related to "adapt[ing] to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek," by either translating this opined limitation into the RFC or explaining why the ALJ declined to credit Dr. MacPherson's opinion as to this limitation.  (AR 393); *see also Macquarrie v. Comm'r of Soc. Sec.*, No. 1:21-CV-00072-CDB, 2023 WL 8242069, at *7 (E.D. Cal. Nov. 28, 2023).

Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

**C.    Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless.  *Molina*, 674 F.3d at 1115.  Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id*.; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The Court cannot conclude that the error is harmless as it is not clear whether inclusion of this moderate limitation as opined by Dr. MacPherson would have eliminated available jobs.  Moderate limitations are not *per se* disabling, but they may translate into more concrete work restrictions. *See Macquarrie*, 2023 WL 8242069, at *7.  For example, the VE testified that each of only one absence and one early departure per month would be tolerated by employers for unskilled work.  (AR 51 (VE testifying that the "number of absences or days leaving early in a month that

would be tolerated by an employer for unskilled work" would be "one of each per month")).  Had the ALJ included different limitations in the RFC based upon a proper review of the evidence, the ultimate disability determination may have been different.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted.  *See*, *e.g.*, *Chamberlin v. Comm;r of Soc. Sec.*, No. 2:24-CV-01382-CSK, 2025 WL 1531348, at *7 (E.D. Cal. May 29, 2025).  On remand, the Commissioner shall either incorporate all of the limitations assessed by Dr. MacPherson in the assessed RFC or explain why any such limitation is not incorporated into the assessed RFC.

<h2 style="text-align:center">V.    CONCLUSION AND ORDER</h2>

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Steven Chan  and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **March 23, 2026**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE